Cite as 2015 Ark. App. 212

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–14–652

| | | |
|---|---|---|
| LASETTE McDOUGAL | | **Opinion Delivered** APRIL 1, 2015 |
| | APPELLANT | |
| | | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. CR-11-45] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE BARBARA HALSEY, JUDGE |
| | | AFFIRMED |

**DAVID M. GLOVER, Judge**

On July 25, 2011, Lasette McDougal pled guilty to the underlying offenses of criminal attempt to manufacture methamphetamine and possession of drug paraphernalia with intent to use. He was sentenced to seven years in the Arkansas Department of Correction on the possession charge. On the criminal attempt to manufacture methamphetamine charge, he received five years' suspended imposition of sentence. On April 24, 2013, the State filed a petition to revoke the suspended sentence, alleging that McDougal delivered methamphetamine on two occasions on September 18, 2012. The revocation hearing was held on two days in February and May 2014. At the conclusion of the hearing, the trial court revoked McDougal's suspended sentence, finding that he had violated its terms and conditions. This appeal followed, with McDougal contending 1) the trial court erred in revoking his suspended sentence as to the first alleged drug transaction because there was a

lack of substantial evidence of his involvement and because the testimony of Kenneth Webb was unreliable and not credible; 2) the trial court erred in revoking his suspended sentence as to the second alleged drug transaction because there was a lack of substantial evidence—the video relied upon by the prosecution did not show drugs, and the testimony of Kenneth Webb was unreliable and not credible; and 3) the trial court erred in admitting into evidence matters relating to the alleged drugs and relying upon testimony relating to the alleged drugs because there was a lack of substantial evidence showing a proper chain of custody and represented a denial of his right to confront witnesses. We affirm.

*Background*

The drug transactions that formed the basis for revoking McDougal's suspended sentence were part of an undercover operation. Kenneth Webb was serving as a confidential informant for ATF and the drug task force. Webb testified that on September 18, 2012, he made arrangements with McDougal to buy some methamphetamines; that McDougal instructed him to come to his apartment in Blytheville; that before he went there, officers searched him for drugs and contraband; that he was outfitted with a video camera, and a video was made of the operations; that in the first transaction, his initial contact was with McDougal but another person, "Kevin," gave him the drugs; that he asked Kevin if McDougal that sent him out there to him, and Kevin said, "yes"; and that he gave Kevin $260 and received an "8-ball" and some methamphetamine in return. Webb testified that the second transaction took place at Larry's Grocery on the same date; that the second transaction was also videotaped; that McDougal actually met him that time and brought him the drugs; that the

video showed McDougal leaning into the vehicle to hand him $100 worth of methamphetamine; that Webb turned the drugs over to law enforcement; and that, in summary, McDougal sold him drugs on two separate occasions on September 18, 2012.

Robert Ephlin, a lieutenant with the Mississippi County Sheriff's Department, testified that he was involved with the September 18, 2012 drug operation involving Webb and McDougal. He corroborated Webb's testimony that Webb was searched, that the vehicle he used was provided by ATF and was also searched; that neither Webb nor the vehicle had contraband; that after the first buy, Webb turned over a small baggie of suspected methamphetamine to Agent Becker; and that it was field-tested, weighed, initialed by Webb, placed in an evidence bag, and turned over to Lieutenant Ephlin. Lieutenant Ephlin testified he was also present when Webb was sent to make the second undercover buy on September 18; that the second buy took place at Larry's Grocery; that Webb, McDougal, and Agent Becker were shown in the video; and that after the buy, Webb turned over a small baggie of methampehtamine. He described the procedures that were followed in identifying and transporting the evidence to the crime lab.

Other officers also testified and corroborated various parts of the undercover operation. Felisia Lackey and Kelly Jarrell, chemists with the State Crime Lab, testified about receiving the two sets of evidence at issue in this case in a sealed condition; that their testing showed the substances to be methamphetamine and dimethyl sulfone. Both sets of evidence were admitted over McDougal's objections, which challenged the chain of custody because no witness was available to testify about initially receiving the evidence at the crime lab.

3

SLIP OPINION

*Standard of Review*

To revoke probation, the trial court must find by a preponderance of the evidence that the defendant inexcusably violated a condition of probation. *Harris v. State*, 2015 Ark. App. 51. The State has the burden of proof but need prove only one violation. *Id.* We will not reverse the trial court's decision to revoke unless it is clearly against a preponderance of the evidence. *Id.* When the determination of a preponderance of the evidence turns on questions of credibility and weight, we defer to the superior position of the trial court to decide these matters. *Id.*

*The First Transaction*

With respect to the first drug transaction, McDougal contends that the trial court erred in revoking his suspended sentence on that basis because there was a lack of substantial evidence of his involvement and because the testimony of Kenneth Webb was unreliable and not credible. We disagree.

In reviewing revocation matters, our court employs a clear-error review, *Harris*, *supra*, not a substantial-evidence review as asserted by McDougal. In addition, it is up to the trial court to weigh the evidence and determine witness credibility.

We find no clear error in the trial court's finding that McDougal was involved in the first sale of drugs to Webb. Webb testified that he arranged the sale with McDougal and that "Kevin," the man who actually handed the drugs to Webb, confirmed he had been told to do so by McDougal. Webb also testified that he paid $260 for the drugs, and Agent Ephlin testified that Webb and the vehicle he used were searched before the sale to make sure there

was no contraband. State Crime Lab chemists testified that the substance was methamphetamine and a cutting agent.

*The Second Transaction*

With respect to the second transaction, McDougal contends that the trial court erred in finding that it provided a basis for revocation because there was a lack of substantial evidence—the video relied upon by the prosecution did not show drugs and the testimony of Kenneth Webb was unreliable and not credible. We disagree.

As mentioned previously, we employ a clear-error standard in reviewing revocation matters, not a substantial-evidence standard. In addition, it is up to the fact-finder, which was the trial court in this instance, to assess witness credibility and the weight to be given evidence. Testimony concerning the second transaction provided evidence that Webb obtained that set of drugs from McDougal himself and that he paid McDougal $100 for it. Moreover, Agent Ephlin similarly testified about Webb and the vehicle being searched for contraband prior to the sale, and testimony from the State Crime Lab chemists established that the second set of drugs was also established to be methamphetamine. We find no clear error in the trial court's decision concerning the second drug transaction.

*The Chain of Custody*

For his final challenge to the trial court's revocation of his suspended sentence, McDougal contends that the trial court erred in admitting into evidence matters relating to the alleged drugs and relying upon testimony relating to the alleged drugs because there was a lack of substantial evidence showing a proper chain of custody and represented a denial of

5

his right to confront witnesses.  Again, we disagree.

First, as noted by the State, McDougal did not preserve a confrontation argument, so we will not address that portion of his argument for the first time on appeal.

Second, there is no merit to the chain-of-custody argument.  The Arkansas Rules of Evidence are not strictly applicable in revocation proceedings.  Ark. R. Evid. 1101(b)(3).  Even if they were, the purpose of establishing a chain of custody is to prevent the introduction of evidence that is not authentic or that has been tampered with.  *Bowerman v. State*, 2014 Ark. App. 221.  To prove authenticity of evidence in a criminal trial, which would be under more stringent requirements than is necessary for a revocation hearing, the State must demonstrate a reasonable probability that the evidence has not been altered in any significant manner.  *Id.*  To allow introduction of physical evidence, it is not necessary that every moment from the time the evidence comes into the possession of a law-enforcement agency until it is introduced at trial be accounted for by every person who could have conceivably come in contact with the evidence during that period.  *Id.*  It is necessary only that the trial court, in its discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with.  *Id.*

Here, McDougal contends that there was a "break in the chain of custody, as no testimony was presented regarding who received the evidence at the state crime lab and what that person did with the evidence." Sergeant John Frazier of the Blytheville Police Department testified that he handed the evidence to a female who worked in receiving at the lab, and two crime-lab chemists testified that they received the evidence from their lab

technicians in a sealed condition.  We find no abuse of the trial court's considerable discretion in admitting this evidence.

Affirmed.

GLADWIN, C.J., and HOOFMAN, J., agree.

*Charles E. Ellis*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jake H. Jones*, Ass't Att'y Gen., for appellee.